# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION a Texas reciprocal inter-insurance exchange, <br><br> Plaintiff, <br><br> v. <br><br> REGIONS FINANCIAL CORPORATION AND REGIONS BANK, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:25-cv-00082 <br><br> JURY TRIAL DEMANDED |

---

## COMPLAINT

---

Plaintiff United Services Automobile Association ("USAA"), by its undersigned counsel, for its Complaint against defendants Regions Financial Corporation and Regions Bank (collectively, "Regions"), states as follows, with knowledge as to its own acts, and on information and belief as to the acts of others:

1.      This lawsuit is brought to address Regions' use of USAA's patented technologies that relate to remote check deposit for mobile banking systems. These patented technologies enable USAA to connect members of the military and their families across the globe to financial services. USAA developed these technologies as part of its mission to improve the financial security of its members. In its decades of serving the military community, USAA has worked to innovate in serving the needs of its members, including a lifestyle that can make getting to a bank branch difficult, particularly if they are out to sea or deployed outside the United States. USAA's innovations and investments are protected by multiple patents issued by the United States Patent & Trademark Office. Regions and its predecessors have chosen to use USAA's patented

technologies without permission and to use them for its own commercial gain. This lawsuit seeks remedies for Regions' misconduct.

## I. THE PARTIES

2.      Plaintiff USAA is a reciprocal interinsurance exchange and unincorporated association organized under the laws of the State of Texas having its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. The USAA family of companies is dedicated to the financial well-being of members of the military and their families through the provision of insurance and banking products and services, and investing services. USAA does business in this judicial district, and through its website at www.usaa.com and USAA Mobile smartphone applications.

3.      On information and belief, Regions Bank is an Alabama state-chartered commercial bank, having its principal place of business in Birmingham, Alabama. On information and belief, Regions Bank is a subsidiary of Regions Financial Corporation, a bank holding company incorporated in Delaware and having its principal place of business in Birmingham, Alabama. Regions does business throughout the United States, including in this judicial district.

## II. JURISDICTION AND VENUE

4.      Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq*.).

5.      The Court has personal jurisdiction over Regions because it has substantial, systematic, and continuous contacts with this judicial district. Regions has a regular and established place of business in the State of Texas and in the Eastern District of Texas, including operating several physical branches in this judicial district, and conducting business with customers residing in this judicial district both through its branches and its mobile banking services. Regions has committed acts of patent infringement and, as detailed below, contributed to or induced acts of patent infringement by others in this judicial district. Regions is registered to do business in Texas and maintains an agent authorized to receive service of process within Texas.

6.      Venue is proper under 28 U.S.C. § 1400(b) because Regions has committed acts of infringement and maintains a regular and established place of business in this judicial district.

7.      Regions occupies several permanent, physical places within this District from which Regions carries out business. For example, Regions has physical branches in the following locations in this District: 722 West Marshall Ave., Longview, Texas; 910 East Hawkins Pkwy, Longview, Texas; 2107 North State Highway 42, Kilgore, Texas; 100 East Ferguson St., Tyler, Texas; 201 East Locust St., Tyler, Texas; 1810 South Southeast Loop 323, Tyler, Texas; 1000 West Southwest Loop 323, Tyler, Texas; 7585 South Broadway Ave., Tyler, Texas; 2000 Richmond Rd., Texarkana, Texas; 307 North William St., Atlanta, Texas; 1337 West McDermott Dr., Allen, Texas; 3451 Long Prairie Rd., Flower Mound, Texas; 16510 FM 423, Frisco, Texas; 221 South 2nd St., Lufkin, Texas; 3000 North University Dr., Nacogdoches, Texas; 2925 South Loop 256, Palestine, Texas; 4020 Preston Rd., Plano, Texas. Regions conducts business from these branches using physical equipment and employees located within the District. Regions advertises a full suite of business services offered at these branches, including deposit transactions.

## III.    BACKGROUND ALLEGATIONS

### USAA's Investments and Pioneering Innovations

8.      This is an action for infringement of patents awarded to research and development teams at USAA for their years of work developing and improving technologies that, among other things, allow banking customers to easily and conveniently deposit paper checks into their accounts from their smartphones – wherever they might be in the world.

9.      USAA has been serving present and former members of the U.S. military and their families since 1922 and is one of America's leading insurance and financial services companies. USAA offers its members a wide range of insurance and banking products and services, and investing services designed to help them meet their financial security needs. Headquartered in San Antonio, Texas, with offices in several states and Europe, USAA employs more than 35,000 people to provide for the financial well-being of over 13 million members.

10.    Unlike traditional banks, which usually maintain a network of brick-and-mortar bank branches or ATMs for customers to use, USAA typically interacts with its members remotely, either by mail, telephone, or with increasing frequency through its usaa.com website or USAA's mobile application. USAA's online and mobile presence is critical to its members' well-being, particularly as USAA's military members are often stationed in distant locations around the world with limited access to traditional banking services.

11.    Driven by its mission to serve its members, starting in or around 2004, USAA invested substantial research and development resources into developing and implementing systems and methods that would provide USAA's members with a real-time capability to deposit a financial instrument from just about anywhere. These pioneering systems and methods resulted in a prototype developed by 2005, and the launch in 2006 of a consumer device remote check deposit system under the name Deposit@Home®. In 2009, USAA launched an application branded as Deposit@Mobile®, which today is available and used worldwide on devices such as iPhones, iPads and Android-based mobile devices. For the first time in banking history, USAA's patented systems allowed customers to deposit checks anytime, anywhere by taking photographs with consumer electronics that consumers actually own or can easily acquire, such as a mobile phone's digital camera.

12.    To date, USAA has invested many millions of dollars and thousands of employee-hours in the development and implementation of its mobile deposit technologies.

**The Asserted USAA Patents**

13.    This action involves four of the patents that protect USAA's investments in its mobile deposit technologies: U.S. Patent Nos. 11,023,719 (the "'719 Patent"), 11,682,222 (the "'222 Patent"), 12,159,310 (the "'310 Patent"), and 12,211,095 (the "'095 Patent") (collectively, in this Complaint, "USAA Patents").

14.    The '719 Patent is entitled "Digital Camera Processing System," and its inventors are Charles Lee Oakes, III, Randy Ray Morlen, Michael Frank Morris, Reynaldo Medina, III, Greg Alan Harpel, Gabriel Glenn Gavia, Bharat Prasad, Frank Kyle Major, and Jeffrey Neal

Pollack. The application from which the '719 Patent derives its effective filing date was filed by USAA on October 31, 2006.

15.     The '222 Patent is entitled "Digital Camera Processing System," and its inventors are Charles Lee Oakes, III, Randy Ray Morlen, Michael Frank Morris, Reynaldo Medina, III, Greg Alan Harpel, Gabriel Glenn Gavia, Bharat Prasad, Frank Kyle Major, and Jeffrey Neal Pollack. The application from which the '222 Patent derives its effective filing date was filed by USAA on October 31, 2006.

16.     The '310 Patent is entitled "System and Method for Mobile Check Deposit Enabling Auto-Capture Functionality Via Video Frame Processing," and its inventors are Michael Patrick Bueche, Jr., Bharat Prasad, Minya Liang, Reynaldo Medina, and Charles Lee Oakes, III. The application from which the '310 Patent derives its effective filing date was filed by USAA on August 21, 2009.

17.     The '095 Patent is entitled "System and Method for Mobile Check Deposit Enabling Auto-capture Functionality Via Video Frame Processing," and its inventors are Michael Patrick Bueche, Jr., Bharat Prasad, Minya Liang, Reynaldo Medina, and Charles Lee Oakes, III. The application from which the '095 Patent derives its effective filing date was filed by USAA on August 21, 2009.

18.     The systems and methods taught by the USAA Patents solve technological problems associated with earlier systems used for capturing images of checks. These innovations enabled USAA, for the first time in banking history, to allow users to transform general purpose consumer devices that they have in their homes or are otherwise easy to acquire into a check image capture device. This had a profound impact on USAA's members and USAA's ability to accept deposit of remote checks, including because it eliminated the need for consumers (many of whom have limited means) to acquire or access specialized check processing equipment to deposit checks remotely.

19.     Among other things, the systems and methods claimed in the '719, and '222 Patents includes technological solutions to assist the customer in placing the digital camera at a proper

distance from the check, present the photo of the check to the customer after the photo is taken with the digital camera, confirm that the mobile check deposit can go forward after optical character recognition is performed on the check in the photo in real time, validate the information determined from the check, check for errors before submitting the check for mobile check deposit, generate an image of the check that complies with requirements for electronic bank-to-bank image transfer, and ensure a secure connection. Additional details and improvements to mobile check depositing systems are further described in the patents.

20.    The '310 and '095 Patents specifically relate to improvements to the remote check deposit process that include, for example, monitoring of the check with respect to a monitoring criterion, a feedback system that instructs the user regarding how to satisfy the monitoring criterion, and an automatic capture system that works in concert with the monitoring system to automatically capture a check image when the monitoring criterion is satisfied. The systems and methods described in the '310 and '095 Patents solve discrete technological problems associated with computing systems used as part of capturing images of checks for mobile devices. The improvements described in the '310 and '095 Patents significantly increased the efficiency and performance of mobile check deposit systems at USAA and elsewhere. The '310 and '095 Patents' improvements to mobile check deposit systems are further described in the specifications.

21.    Prior to USAA's inventions, checks were processed for deposit using specialized check scanning machines, which typically were located in bank facilities or leased to businesses for use in their back offices. High-tech equipment manufacturers sold a variety of check scanning machines that cost up to tens of thousands of dollars.

22.    The passage of the federal "Check 21 Act" in 2003 increased the technical risks associated with check imaging. A report by Alogent entitled "The Client Business Case for Remote Deposit Capture" explained how, under Check 21, items would be returned due to poor image quality, either on the digital image, or the printed Image Replacement Document (IRD).

23.    The deposit of check images requires compliance with certain technical specifications, such as the "Specifications for Electronic Exchange of Check and Image Data,"

also known as DSTU X9.37-2003: a technical specification published by the Accredited Standards Committee X9, Inc. that spells out the file sequences, record types, and field formats to be used for the electronic exchange of check MICR line, associated check processing data, and check images.

24.    An industry white paper entitled "Check 21: Controlling Image Quality at the Point of Capture" was published in 2004. The white paper acknowledges that one challenge facing remote deposit capture ("RDC") is that the human eye does not have the ability to distinguish between a check image that meets digital processing criteria and one that does not. For example, the white paper points out that what is an acceptable image to one person may be unacceptable to another. The white paper discussed the importance of ensuring that an acceptable image of a check is captured at the first point of entry to the check clearing process, as a check image with quality issues is likely to be unpayable and represents a liability to the bank. Further, the report identified and discussed basic measurement metrics to ensure that a check image may be successfully cleared. Also in 2004, the FSTC, a financial industry technical group, published a report entitled "Image Quality and Usability Assurance- Phase I." The report discussed a number of factors such as image size, skew, lightness/darkness, focus, and noise, among others, that can lead to a failed image. Other publications discussing the perceived challenges of remote deposit include statements made in 2005 by CIT Engineering Team, who designs specialized scanners for the RDC process, that the RDC process is so delicate that small insights and/or small oversights are what distinguish an outstanding check scanning product from a mediocre one.

25.    When USAA introduced its patented technology to the market, it was met with both delight and concern because of its disruptive force. For example, in September 2009, AdAge published a report entitled "How Mobile Technology Is Changing Banking's Future," which observed that "USAA represents the bleeding edge of mobile banking technology" and described its pioneering system as a "technological development[] that allow[s] for deposits by iPhone and mobile payments." As another example, in June 2009, Celent published an article entitled "USAA's Mobile Remote Deposit Capture Initiative." The article stated that mobile RDC is so

disruptive that many banks might pass on the idea. The report acknowledged that USAA's mobile RDC provided a compelling competitive advantage over other banks.

26.    By facilitating and improving remote mobile deposit, the innovations of the USAA Patents facilitate significant cost savings and provide many other financial benefits to banks. For example, in 2011, NCR published a white paper entitled "Mobile Remote Deposit Capture." The white paper reported that the average cost of processing a paper check transaction at a bank branch is $3.75, and that a mobile deposit costs just $0.14.

27.    As another example, in 2015, Celent published a report entitled "State of Remote Deposit Capture 2015- Mobile Is the New Scanner." The abstract of the report observed that mobile RDC was becoming the alternative to specialized check scanners, with banks racing to offer mobile RDC, which Celent predicted would have a profound effect on the branch channel. The report also observed that USAA's systems result in a substantial improvement over the existing marketplace of complex, expensive check scanning machines and that by the date of the report mobile check image capture users outnumbered those using specialized desktop devices by more than 40 to 1. As another example, in 2016, an article entitled "Mobile Check Deposits- Pro Tips to Ensure They Go Smoothly" was published by an industry technology analyst on nerdwallet.com. The article acknowledged that mobile check deposit had become the most popular feature of mobile banking, estimating that there are about 87 million people in the U.S. depositing checks using mobile check deposit. The article also stated that autocapture provides a technological solution for capturing an image that allows even a first-time user to be successful.

### Regions' Infringement

28.    Regions is a large, full-service provider of consumer and commercial banking that services customers across the South, Midwest, and Texas. According to Regions' 2024 Earnings Call, over 24% of Regions' deposit transactions come through the mobile channel.

29.    Regions' mobile remote deposit capture systems, including but not limited to mobile remote deposit offered under *Regions Mobile Deposit*, are referred to herein, along with any other infringing instrumentalities that include similar functionality, as the "Regions Mobile

Deposit System." The Regions Mobile Deposit System includes the Regions Mobile App for iPhone, iPad, and Android devices, the mobile devices on which the Regions Mobile App is installed and run, and the Regions hardware and software systems that implement the Regions Mobile Deposit service.

30.    On information and belief, Regions develops the Regions Mobile App and makes it available to customers through various app stores. Regions requires customers to download the Regions Mobile App in order to deposit checks remotely. Indeed, Regions requires users to use the infringing system in order to deposit checks to their Regions account via a mobile device, and provides terms and conditions governing their use. For example, Regions' terms and conditions dictate that "[y]ou agree to follow any and all procedures, instructions, and guides for use of the Mobile Remote Deposit Capture Service, and to enable or disable such Wireless Device settings (including, but not limited to, GPS or geolocation settings and camera settings), as we may require or provide from time to time."

31.    Further, Regions controls the infringing Regions Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

32.    Regions touts that Regions Mobile Deposit allows users to "easily make a deposit from anywhere, anytime" and provides detailed instructions, including a "mobile deposit informational page" which contains "step-by-step instructions on making a deposit using the app," as well as a video, to promote its use. Regions also directs customers to download its application for iPhone or Android devices from the respective app stores for those devices, where the Regions app is available for download.

33.    Regions receives mobile check deposits from customers who, for example, download its application for iPhone or Android devices and use the application and device as instructed by Regions, including as detailed on Regions' website and required by its user guidelines. On information and belief, Regions also uses its Regions Mobile Deposit system internally, such as for testing and demonstrations.

34.    Regions did not release Regions Mobile Deposit until years after USAA had already implemented and released its patented technology to widespread adoption, demonstrating the commercial viability of USAA's patented technology.

35.    Regions was on notice and, on information and belief, had actual knowledge of its infringement of the USAA Patents before the filing of the Complaint, and chose to infringe rather than engaging in licensing discussions.

36.    USAA reached out directly to Regions to attempt to engage in a discussion regarding USAA's mobile deposit patents. For example, USAA sent Regions a letter on October 20, 2020, which offered Regions "a license, on reasonable terms, as fair compensation for the continued use of [USAA's] patent-protected innovation." In the letter, USAA noted that its "licensing campaign is an effort to recover a small and fair portion of the immense value that it has injected into the financial services industry through its invention of Remote Deposit Technology." USAA also provided Regions with a list of issued USAA patents, which included the parent patents to the '719, '222, '310, and '095 Patents. Regions ignored the letter.

37.    On information and belief, Regions had long been on notice of the USAA Patents and their applicability to Regions, as USAA's patents have been widely publicized and discussed in the banking industry.

38.    For example, in May 2017, USAA issued a press release informing banks about its patents that cover remote mobile deposit technology, and inviting them to license USAA's patents. USAA's announcement was widely reported by the banking industry.

39.    As another example, in 2018 USAA filed two complaints against Wells Fargo for infringement of certain of USAA's mobile deposit patents. The first complaint, filed in June 2018, included claims for infringement of a parent to the '310 and '095 Patents (which had not yet issued at that time). The second complaint, filed in August 2018, included claims for infringement of parents to the '719, and '222 Patents (which had not yet issued at that time).

40.    As a further example, in 2020 USAA filed litigation against PNC Bank, NA alleging infringement of, among other things, one of the parents to the '310 and '095 Patents. In

2021, USAA filed a second complaint against PNC, which included claims for infringement of the parent patents for the '719 and '222 Patents.

41.    As an additional example, in 2022 USAA filed litigation against Truist Bank alleging infringement of, among other things, a parent patent to the '310 and '095 Patents. In 2023, USAA amended its complaint against Truist, adding claims for infringement of a parent patent to the '222 Patent.

42.    USAA's patent claims were widely discussed in the banking industry. As an example, the *American Banker*, a publication which describes itself as "the essential resource for senior executives in banking and financial services, keeping its users updated on vital developments and focusing sharply on their most important concerns" ran a series of articles reporting on the USAA lawsuits against Wells Fargo and repeatedly noted that in the opinion of the publication the USAA patents had significant implications for other banks using USAA's mobile deposit technology. These included, for example, a June 2018 article entitled "Is USAA vs. Wells Fargo the start of a broader patent war?" Wells Fargo was found, *inter alia*, to infringe parent patents to the '310 and '095 Patents, and USAA was awarded $200 million in past damages. The verdict was also widely reported on in the banking industry. For example, an article entitled "USAA won $200M from Wells Fargo in patent fight. Will others be on the hook?" was published in November 2019.

43.    Another article in the *American Banker*, published in January 2020, discussed the result of the second Wells Fargo lawsuit, in which Wells Fargo was found to infringe the parent of the '719, and '222 Patents, and USAA was awarded $102.8 million in past damages. For example, the article reported "Wells Fargo has lost a second mobile deposit patent lawsuit brought against it by USAA" and noted that "other banks should be on alert if they use the same technology" and specifically referenced USAA's Deposit@Mobile product. Similar articles appeared in other major publications such as *Bloomberg* and *Business Insider*.

44.    Further coverage in *American Banker*, published in May 2022, entitled "USAA scores mobile deposit capture patent win against PNC," addressed the outcome of the suit between

USAA and PNC, stating that USAA was awarded $218 million in damages "over its claims that PNC Bank infringed four USAA patents related to remote check deposit technology."

45.    In October 2023, the *American Banker* published another article reporting on the Truist lawsuit, entitled "USAA wins another remote-deposit patent victory, this time over Truist," which noted that Truist had entered into a settlement and patent licensing agreement with USAA to resolve USAA's claims of patent infringement.

46.    As another example, USAA has entered into a number of license agreements with other banks and financial institutions, which also have been widely publicized. For example, on August 28, 2023, USAA announced that it had entered into a license agreement with Discover Financial Services "giving Discover the right to continue offering its customers the convenience of easily depositing checks with their mobile device."

47.    As another example, in June 2024, USAA announced that it had entered into an agreement with Esquire Bank that provided Esquire Bank with a license to USAA's patents covering remote deposit capture technology so that "Esquire may continue offering its customers the convenience of easily depositing checks with their mobile device."

48.    As another example, in October 2024, USAA announced that it had entered into an agreement with First Citizens Bank & Trust Company (hereinafter "First Citizens") that provided First Citizens with a license to USAA's patents covering remote deposit capture technology so that "First Citizens Bank may continue offering its customers the convenience of easily depositing checks with their mobile device."

49.    In addition to the widespread coverage regarding USAA's patent lawsuits and the banks who have taken licenses to lawfully use USAA's Patents, USAA's Deposit@Mobile® technology has been well-known and publicized for years, and USAA receives widespread acclaim for its pioneering innovations in mobile deposit. For example, a 2019 report by Javelin Strategy and Research named USAA "as an overall 'Leader' in both mobile and online banking," and Regions was also "ranked as a 'leader'" in "account opening" in both mobile and online banking.

Upon information and belief, Regions is aware of this and other acclaim for USAA's Deposit@Mobile® products, including because it was widespread in the industry.

50.    USAA is further informed and believes that Regions has actual and constructive knowledge of the USAA Patents as a result of, among other things, its awareness of USAA's Deposit@Mobile® products and USAA's patent marking. For example, USAA marks its Deposit@Mobile® products pursuant to 35 U.S.C. § 287 through the USAA mobile application, including with the USAA Patents.

51.    Further, to the extent that Regions contends it lacked actual knowledge of its infringement of any of the USAA Patents before the time of service of this Complaint, it was willfully blind by deliberately avoiding investigating USAA's patents or inspecting USAA's mobile check deposit application and/or instructing its employees not to investigate USAA's patents or inspect USAA's mobile check deposit application.

52.    As detailed below, Regions' conduct with respect to Mobile Deposit constitutes willful infringement of USAA's Patents. Regions' use of the USAA Patents is not licensed or authorized by USAA in any way.

53.    Regions has profited, and continues to profit, including by providing its infringing mobile deposit service to millions of Regions customers without USAA's permission and without any compensation to USAA, materially harming USAA and its members with disregard for USAA's patent rights.

## IV.    FIRST CLAIM FOR RELIEF – '719 PATENT

54.    USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

55.    The '719 Patent, entitled "Digital Camera Processing System" was duly and legally issued on June 1, 2021. A true and correct copy of the '719 Patent is attached as Exhibit A.

56.    USAA owns by assignment the entire right, title, and interest in and to the '719 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

57.    USAA is informed and believes, and on this basis alleges, that Regions, agents of Regions, and/or third parties acting under Regions' direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '719 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States the Regions Mobile Deposit System. Regions controls the Regions Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

58.    For example, the Regions Mobile Deposit System comprises instructions of a downloadable program stored on a machine-readable medium, the instructions configured to, when executed, cause a processor of a user's computing device to instruct the user to capture an image of a check.

59.    For example, the Regions Mobile Deposit System is configured to, when executed, use a display screen of the user's computing device to assist the user in having a digital camera capture the image of the check and assist the user as to an orientation for capturing the image of the check. In addition, the Regions Mobile Deposit System presents the image of the check to the user after the image is captured.

60.    Additionally, on information and belief, the Regions Mobile Deposit System uses a wireless network to transmit a copy of the captured image over a wireless communication link from the user's computing device and to the remote computer system.

61.    Additionally, on information and belief, the Regions Mobile Deposit System is configured to receive the copy of the captured image and process the check for mobile check deposit in a bank and update a balance of an account based on an amount depicted in the check.

62.    Regions is also inducing infringement of the '719 Patent, in violation of U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell the Regions Mobile Deposit System in the United States, or to import the Regions Mobile Deposit System into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied the Regions Mobile Deposit System in or from the United States, without

license or authority from USAA, with knowledge of or willful blindness to the fact that Regions'
actions will induce others to directly infringe the '719 Patent. Regions actively encourages, directs,
and controls third parties, including its end users, to make and/or use the Regions Mobile Deposit
System in an infringing manner, including through Regions' website, advertisements,
documentation/instructional material, customer support, application and feature descriptions, and
in-application instructions. Regions has intentionally aided and encouraged third parties, including
its end users, to use the Regions Mobile Deposit System in the United States in a manner that it
knows would infringe or have a high probability of infringing the '719 Patent, with the specific
intent that those performing the acts infringe the '719 Patent.

63.    Regions is contributorily infringing the '719 Patent in violation of 35 U.S.C. §
271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of
35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, the
Regions Mobile Deposit System for use in infringing the '719 Patent, constituting a material part
of the invention, knowing the Regions Mobile Deposit System to be especially made or especially
adapted for use in infringing the '719 Patent. The Regions Mobile Deposit System is not a staple
article or commodity of commerce suitable for substantial non-infringing use.

64.    As a result of Regions' infringement of the '719 Patent, USAA has been damaged.
In addition, Regions' infringing acts and practices have caused and are causing immediate and
irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of
Regions' wrongful acts in an amount yet to be determined and to receive such other and further
relief, including equitable relief, as this Court deems just and proper.

65.    USAA is further informed, and on this basis alleges, that Regions' infringement of
the '719 Patent has been and continues to be deliberate and willful, and, therefore, this is an
exceptional case warranting an award of enhanced damages for up to three times the actual
damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As discussed
above, Regions has had knowledge of the '719 Patent and its infringement thereof, and yet has

deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## V.    SECOND CLAIM FOR RELIEF – '222 PATENT

66.    USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

67.    The '222 Patent, entitled "Digital Camera Processing System" was duly and legally issued on June 20, 2023. A true and correct copy of the '222 Patent is attached as Exhibit B.

68.    USAA owns by assignment the entire right, title, and interest in and to the '222 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

69.    USAA is informed and believes, and on this basis alleges, that Regions, agents of Regions, and/or third parties acting under Regions' direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '222 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States the Regions Mobile Deposit System. Regions controls the Regions Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

70.    For example, the Regions Mobile Deposit System comprises an image capture and processing system for use with a digital camera.

71.    Additionally, the image capture and processing system comprises a portable device comprising a general purpose computer including a processor coupled to a memory storing camera software comprising instructions that, when executed by the processor, control the digital camera. Additionally, the memory stores a downloaded software component configured to control the camera software and to manage capturing electronic images.

72.    Additionally, the software component comprises instructions that cause the portable device to perform operations including instructing a user of the portable device to place

a check in front of the digital camera and have the digital camera capture electronic images of a front and a back side of the check.

73.    Additionally, the software component comprises instructions that cause the portable device to perform operations including displaying an instruction on a display of the portable device to assist the user in having the digital camera capture the electronic images of the check, and assisting the user as to an orientation for capturing the electronic images of the check. In addition, Regions Mobile Deposit System presents the image of the check to the user for user approval.

74.    Additionally, on information and belief, the Regions Mobile Deposit System uses a wireless network to transmit a copy of the electronic images over a public electronic communications network from the portable device, wherein the transmitted copy of the electronic images is a modified version of the electronic images captured with the digital camera, the modified version having a different electronic format than the images captured with the digital camera.

75.    Additionally, on information and belief, the Regions Mobile Deposit System submits the check for deposit when the system authenticates the user presented with the electronic images of the check and when the user approves.

76.    Additionally, on information and belief, the Regions Mobile Deposit System comprises a plurality of processors coupled to a plurality of memory devices storing instructions that, when each instruction of the instructions is executed by a processor of the plurality of processors coupled to a memory device of the plurality of memory devices storing that instruction, cause the system to perform additional operations.

77.    For example, the Regions Mobile Deposit System confirms that the deposit can go forward after performing an optical character recognition (OCR) on the check, the OCR including determining an amount of the check, comparing the determined amount to an amount entered by the user into the portable device, and reading a MICR line of the check, as illustrated, for example, by corresponding error messages provided by the application.

78.    Additionally, on information and belief, the Regions Mobile Deposit System initiates after the confirming.

79.    Additionally, the Regions Mobile Deposit System generates a log file for the deposit, the log file including an image of the check.

80.    Additionally, on information and belief, another computer, remote from the portable device, comprising a processor coupled to a memory storing instructions that, when executed by the processor, cause the other computer to update a balance to reflect the amount of the check submitted for deposit by the portable device.

81.    Regions is also inducing infringement of the '222 Patent, in violation of U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell the Regions Mobile Deposit System in the United States, or to import the Regions Mobile Deposit System into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied the Regions Mobile Deposit System in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that Regions' actions will induce others to directly infringe the '222 Patent. Regions actively encourages, directs, and controls third parties, including its end users, to make and/or use Regions Mobile Deposit System in an infringing manner, including through Regions' website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Regions has intentionally aided and encouraged third parties, including its end users, to use the Regions Mobile Deposit System in the United States in a manner that it knows would infringe or have a high probability of infringing the '222 Patent, with the specific intent that those performing the acts infringe the '222 Patent.

82.    Regions is contributorily infringing the '222 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, the Regions Mobile Deposit System for use in infringing the '222 Patent, constituting a material part of the invention, knowing the Regions Mobile Deposit System to be especially made or especially

adapted for use in infringing the '222 Patent. The Regions Mobile Deposit System is not a staple article or commodity of commerce suitable for substantial non-infringing use.

83.    As a result of Regions' infringement of the '222 Patent, USAA has been damaged. In addition, Regions' infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of Regions' wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

84.    USAA is further informed, and on this basis alleges, that Regions' infringement of the '222 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As discussed above, Regions has had knowledge of the '222 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## VI.    <u>THIRD CLAIM FOR RELIEF – '310 PATENT</u>

85.    USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

86.    The '310 Patent, entitled "System and Method for Mobile Check Deposit Enabling Auto-Capture Functionality Via Video Frame Processing" was duly and legally issued on December 3, 2024. A true and correct copy of the '310 Patent is attached as Exhibit C.

87.    USAA owns by assignment the entire right, title, and interest in and to the '310 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

88.    USAA is informed and believes, and on this basis alleges, that Regions, agents of Regions, and/or third parties acting under Regions' direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '310 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or

importing into the United States, the Regions Mobile Deposit System. Regions controls the Regions Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

89.    For example, the Regions Mobile Deposit System performs a method that enables mobile check deposit autocapture functionality via video frame processing. Further to this example, the Regions Mobile Deposit System provides an app for download to a mobile device of a user, where the user's mobile device includes a camera and a memory that stores a software abstraction layer for controlling the camera. Additionally, the Regions Mobile Deposit System controls the check deposit by controlling the camera through the software abstraction layer.

90.    As another example, the Regions Mobile Deposit System uses the app to cause the user's mobile device to provide instructions to the user for capturing an image of a check.

91.    As another example, the Regions Mobile Deposit System uses the app to generate a live video of the check in a field of view of the camera and causes the live video to be generated by controlling the camera through the software abstraction layer.

92.    As another example, the Regions Mobile Deposit System overlays an alignment guide on the live video of the check in the field of view of the camera.

93.    Additionally, the Regions Mobile Deposit System monitors the live video of the check in the field of view of the camera with respect to at least one monitoring criterion, determines that a video frame of the live video of the check satisfies the at least one monitoring criterion and then automatically captures the video frame, and when the video frame of the live video of the check in the field of view of the camera is determined to satisfy the at least one monitoring criterion provides feedback advising the user that the check has been captured.

94.    As another example, on information and belief, the Regions Mobile Deposit System uses a wireless network to transmit a digital image of the check from the user's mobile device and submits the check for mobile check deposit in the bank after automatically capturing the video frame, wherein the digital image is the captured video frame or is based on the captured video frame.

95.     As another example, on information and belief, the Regions Mobile Deposit System, before the submitting, confirms that the mobile check deposit can go forward after optical character recognition is performed on the check in the digital image, a magnetic ink character recognition (MICR) line on the check in the digital image is recognized, and an amount payable on the check in the image is validated.

96.     As another example, the Regions Mobile Deposit System receives the digital image of the check transmitted by the user's mobile device and processes it, including by performing optical character recognition on the check in the digital image and verifying the digital image of the check is acceptable for mobile check deposit.

97.     As another example, the app downloaded to the user's device in the Regions Mobile Deposit System is configured to cause the user's mobile device to perform additional operations including receiving an indication of a result of the processing before confirming that the mobile check deposit can go forward.

98.     As another example, the Regions Mobile Deposit System updates a balance of an account at a financial institution of the user to reflect the amount of funds associated with the check submitted for mobile check deposit by the user's mobile device, after submitting the check for mobile check deposit in the bank, confirming that the mobile check deposit can go forward, and verifying that the digital image of the check is acceptable for mobile deposit.

99.     As another example, the downloaded app in the Regions Mobile Deposit System performs additional steps, including before determining that the video frame of the live video of the check satisfies the at least one monitoring criterion, determining that a different video frame of the live video of the check does not satisfy the at least one monitoring criterion and after making such a determination providing feedback to the user.

100.    Regions is inducing infringement of the '310 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell the Regions Mobile Deposit System in the United States, or to import the Regions Mobile Deposit System into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying

or causing to be supplied the Regions Mobile Deposit System in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that Regions' actions will induce others to directly infringe the '310 Patent. Regions actively encourages, directs, and controls third parties, including its end users, to make and/or use the Regions Mobile Deposit System in an infringing manner, including through Regions' website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Regions has intentionally aided and encouraged third parties, including its end users, to use the Regions Mobile Deposit System in the United States in a manner that it knows would infringe or have a high probability of infringing the '310 Patent, with the specific intent that those performing the acts infringe the '310 Patent.

101.    Regions is contributorily infringing the '310 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, the Regions Mobile Deposit System for use in infringing the '310 Patent, constituting a material part of the invention, knowing the Regions Mobile Deposit System to be especially made or especially adapted for use in infringing the '310 Patent. The Regions Mobile Deposit System is not a staple article or commodity of commerce suitable for substantial non-infringing use.

102.    As a result of Regions' infringement of the '310 Patent, USAA has been damaged. In addition, Regions' infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of Regions' wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

103.    USAA is further informed, and on this basis alleges, that Regions' infringement of the '310 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As noted above, Regions has had knowledge of the '310 Patent and its infringement thereof, and yet has deliberately

continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## VII.   FOURTH CLAIM FOR RELIEF – '095 PATENT

104.   USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

105.   The '095 Patent, entitled "System and Method for Mobile Check Deposit Enabling Auto-Capture Functionality Via Video Frame Processing" was duly and legally issued on January 28, 2025. A true and correct copy of the '095 Patent is attached as Exhibit D.

106.   USAA owns by assignment the entire right, title, and interest in and to the '095 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

107.   USAA is informed and believes, and on this basis alleges, that Regions, agents of Regions, and/or third parties acting under Regions' direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '095 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, the Regions Mobile Deposit System. Regions controls the Regions Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

108.   For example, the Regions Mobile Deposit System consists of a system enabling mobile check deposit auto-capture functionality via video frame processing, the system comprising a mobile device of a user, the user's mobile device including a camera, a processor, and a memory coupled to the processor.

109.   Additionally, on information and belief, the memory stores a software abstraction layer for controlling the camera, the software abstraction layer comprising instructions that, when executed by the processor, control the camera.

110.   Additionally, the Regions Mobile Deposit System stores a downloaded app, the downloaded app associated with a bank to control check deposit by controlling the camera

through the software abstraction layer, the downloaded app comprising instructions that, when executed by the processor, cause the user's mobile device to perform operations.

111.    As an example, the Regions Mobile Deposit System uses the app to cause the user's mobile device to provide instructions to the user for capturing an image of a check.

112.    As another example, the Regions Mobile Deposit System uses the app to generate a live video of the check in a field of view of the camera and causes the live video to be generated by controlling the camera through the software abstraction layer.

113.    As another example, the Regions Mobile Deposit System overlays an alignment guide on the live video of the check in the field of view of the camera.

114.    Additionally, the Regions Mobile Deposit System monitors the live video of the check in the field of view of the camera with respect to at least one monitoring criterion, determines that a video frame of the live video of the check satisfies the at least one monitoring criterion and then automatically captures the video frame, and when the video frame of the live video of the check in the field of view of the camera is determined to satisfy the at least one monitoring criterion provides feedback advising the user that the check has been captured.

115.    As another example, on information and belief, the Regions Mobile Deposit System uses a wireless network to transmit a digital image of the check from the user's mobile device and submits the check for mobile check deposit in the bank after automatically capturing the video frame, wherein the digital image is the captured video frame or is based on the captured video frame.

116.    As another example, on information and belief, the Regions Mobile Deposit System confirms that the mobile check deposit can go forward after optical character recognition (OCR) is performed on the check in the digital image, a magnetic ink character recognition (MICR) line on the check in the digital image is recognized, and an amount payable on the check in the image is validated.

117.    Additionally, on information and belief, in the Regions Mobile Deposit System a server, remote from the user's mobile device, comprising a processor coupled to a memory storing instructions that, when executed by the processor, cause the server to perform operations.

118.    As an example, the Regions Mobile Deposit System receives the digital image of the check transmitted by the user's mobile device and processes it, including by performing OCR on the check in the digital image and verifying the digital image of the check is acceptable for mobile check deposit. The user's mobile device receives an indication of a result of the server's processing before confirming that the mobile check deposit can go forward.

119.    As another example, the app downloaded to the user's device in the Regions Mobile Deposit System is configured to cause the user's mobile device to perform additional operations including receiving an indication of a result of the processing before confirming that the mobile check deposit can go forward.

120.    As another example, in the Regions Mobile Deposit System a computer comprising a processor coupled to a memory storing instructions that, when executed by the processor, cause the computer to update a balance of an account at a financial institution of the user to reflect the amount of funds associated with the check submitted for mobile check deposit by the user's mobile device, after submitting the check for mobile check deposit in the bank, confirming that the mobile check deposit can go forward, and verifying that the digital image of the check is acceptable for mobile deposit.

121.    Regions is inducing infringement of the '095 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell, or offer to sell the Regions Mobile Deposit System in the United States, or to import the Regions Mobile Deposit System into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied the Regions Mobile Deposit System in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that Regions' actions will induce others to directly infringe the '095 Patent. Regions actively encourages, directs, and controls third parties, including its end users, to make and/or use the Regions Mobile Deposit

System in an infringing manner, including through Regions' website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Regions has intentionally aided and encouraged third parties, including its end users, to use the Regions Mobile Deposit System in the United States in a manner that it knows would infringe or have a high probability of infringing the '095 Patent, with the specific intent that those performing the acts infringe the '095 Patent.

122.    Regions is contributorily infringing the '095 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, the Regions Mobile Deposit System for use in infringing the '095 Patent, constituting a material part of the invention, knowing the Regions Mobile Deposit System to be especially made or especially adapted for use in infringing the '095 Patent. The Regions Mobile Deposit System is not a staple article or commodity of commerce suitable for substantial non-infringing use.

As a result of Regions' infringement of the '095 Patent, USAA has been damaged. In addition, Regions' infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of Regions' wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

123.    USAA is further informed, and on this basis alleges, that Regions' infringement of the '095 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As noted above, Regions has had knowledge of the '095 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## VIII.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, USAA prays for judgment against Regions as follows:

A.    That Regions has infringed, and continues to infringe, each of the USAA Patents;

B.    That each claim of each of the USAA Patents is valid and enforceable;

C.    That Regions pay damages adequate to compensate USAA for its infringement, together with interest and costs under 35 U.S.C. § 284;

D.    That Regions be ordered to pay pre-judgment and post-judgment interest on the damages assessed;

E.    That Regions be ordered to pay supplemental damages to USAA, including interest, with an accounting, as needed, of all infringements and/or damages not presented at trial;

F.    That Regions' infringement is willful and that the damages awarded to USAA should be enhanced up to three times the actual damages awarded;

G.    That USAA be awarded damages for its costs, disbursements, expert witness fees, and attorney's fees and costs incurred in prosecution this action, with interest, including damages for an exceptional case pursuant to 35 U.S.C. § 285 and as otherwise provided by law; and

H.    That USAA be awarded such other and further relief, including any and all injunctive and other equitable relief, as this Court deems just and proper.

## IX.    <u>DEMAND FOR JURY TRIAL</u>

124.    Pursuant to Federal Rule of Civil Procedure 38(b), USAA hereby demands a trial by jury on all issues triable to a jury.


Dated: January 28, 2025                    Respectfully submitted,

**PARKER, BUNT & AINSWORTH, P.C.**

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt
Texas State Bar No. 00787165
100 E. Ferguson, Suite 418
Tyler, Texas 75702
Tel. (903) 531-3535

**Attorneys for Plaintiff United Services
Automobile Association (USAA)**

Co-Counsel:

**IRELL & MANELLA LLP**

Jason Sheasby (CA #205455)
Lisa Glasser (CA #223406)
Rebecca Carson (CA #254105)
Anthony Rowles (CA #301209)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199